UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| MIGUEL DAVILA, | : | CIVIL NO: 3:13-CV-00574 |
|---|---|---|
| Plaintiff | : | |
| | : | (Judge Mannion) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| CORRECTIONAL CARE, INC. and COUNTY OF LACKAWANNA, | : | |
| | : | |
| Defendants | : | |

# REPORT AND RECOMMENDATION

## I. Introduction.

This case comes before the court for a statutorily mandated screening review. The plaintiff, Miguel Davila, claims that the defendants violated the Eighth Amendment, the Fourteenth Amendment, and the Americans with Disabilities Act with respect to the medical and mental health treatment provided to him as well as the conditions of his confinement at the Lackawanna County Prison. We have reviewed the complaint in accordance with 28 U.S.C. § 1915(e)(2), and we conclude that it fails to state a claim upon which relief may be granted. We recommend that Davila's application for leave to proceed *in forma pauperis* be granted, that the complaint be dismissed without prejudice, and that Davila be granted leave to file an amended complaint.

## II. Factual Background and Procedural History.

Davila, proceeding *pro se*, commenced this 42 U.S.C. § 1983 case by filing a complaint and an application for leave to proceed *in forma pauperis*. Although Davila is no longer incarcerated, from his allegations it is clear that in the past he was in incarcerated at the Lackawanna County Prison, but he does not allege any dates in his complaint. The defendants are the County of Lackawanna and Correctional Care, Inc., which, Davila alleges, is a private corporation that has a contract with Lackawanna County to provide all health care services at the Lackawanna County Prison.

Davila complains about lack of medical treatment at the prison. He alleges that he did not receive appropriate treatment for an ear infection, and the lack of treatment resulted in his ear drum rupturing, which caused him severe pain, permanent hearing loss, tinnitus, and vertigo. According to Davila, after he notified staff about his ear infection and requested to see a doctor, no medical professional came to see him prior to his ear drum rupturing. He alleges that he was not seen or evaluated by a medical doctor or an ear, nose, and throat specialist while incarcerated at the Lackawanna County Prison.

Davila also complains about lack of mental health treatment at the prison. He alleges that, throughout his incarceration at the Lackawanna County Prison, he was

2

not offered or provided with any mental health counseling or therapy to treat his mental health disabilities. He was not seen or evaluated by a psychiatrist or psychologist while in the Lackawanna County Prison. Davila alleges that Correctional Care did not provide equal, adequate, and humane treatment to the mentally disabled prisoners in the Lackawanna County Prison, and Correctional Care did not provide mentally disabled inmates with programs and services necessary to effectively treat their mental disabilities. According to Davila, he was placed into an environment that did not promote emotional well being and ongoing recovery of someone mentally disabled, and the denial of medical and mental health treatment aggravated his pre-existing conditions.

Davila further complains about his conditions of confinement at the prison. He alleges that he was placed in a filthy "camera cell,"[1] which contained blood, feces, urine, human hair, and other hazardous materials. According to Davila, he was placed in the cell naked and without basic items necessary to properly groom, feed, and clean himself: he had no clothes, no toothbrush, no toothpaste, no toilet paper, no soap, no spoon, etc. After days of not brushing his teeth, his teeth and gums began to swell and bleed profusely. Further, he alleges, after days of not eating because he did not have proper utensils and because he had pain in his teeth and

---

[1] Davila does not allege what he means by the term "camera cell."

gums, he developed gastrointestinal problems including constipation, internal hemorrhoids, and severe rectal bleeding. Davila alleges that his placement in the cell put him in immediate danger of contracting an illness or disease, and he was held in the cell for nine days and only transferred to the medical unit after he developed an eye infection.

Davila suggests that his placement in the "camera cell" was part of being placed on behavior watch for having mental health disabilities. He alleges that being placed on behavior watch segregated him from the population of the prison and denied him access to participate in training, education, and personal enrichment programs offered at the prison.

Davila claims that the defendants violated his Eighth Amendment rights, his Fourteenth Amendment rights, and the Americans with Disabilities Act. He seeks injunctive relief as well as compensatory damages and punitive damages.

### III. Discussion.

#### A. Screening of *Pro Se* Complaints—Standard of Review.

This Court has a statutory obligation to conduct a preliminary review of *pro*

*se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915(e)(2) which provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal—
> (i) is frivolous or malicious
> (ii) fails to state a claim upon which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

Under this Section, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently

> with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir.2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler, supra*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id*.

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir.1994). A court, however, "need

not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal, supra,* 556 U.S. at 679,

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir.2010)(quoting *Iqbal, supra,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

**B. Davila Fails to State a 42 U.S.C. § 1983 Claim Upon Which Relief May Be Granted.**

The defendants are Lackawanna County—a municipality—and Correctional Care, Inc.—a private corporation that provides medical care to prisoners at the Lackawanna County Prison.

Under 42 U.S.C. § 1983, a municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*, *Monell v. Department of Social Servs.,* 436 U.S. 658, 691 (1978), but a municipality may be liable under 42 U.S.C. § 1983 for its own illegal acts. *Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011). To state a claim against a municipality, the plaintiff must allege that the violation of his rights was caused by a policy of the municipality. *Id.* Municipal policies include the decisions of a government's lawmakers and the acts of its policymaking officials as well as municipal customs, which are acts or practices that, even though not formally approved by an appropriate decisionmaker, are so persistent and widespread as to have the force of law. *Id.*; *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003). In other words, a municipality "'can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom." *Mulholland v Gov't County of Berks*, 706 F.3d 227 (3d Cir. 2013).

"Based on the Supreme Court's reasoning in the landmark *Monell* case, courts have recognized a 'two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom.'" *Id. (quoting Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996)).

> Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official

> proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

*Id.* (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)(citations omitted) (alterations in original). "Custom . . . may also be established by evidence of knowledge and acquiescence." *Beck, supra,* 89 F.3d at 971. "To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). Additionally, there must be a direct causal link between the policy or custom and the alleged constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989).

The principle that *respondeat superior* liability does not exist under 42 U.S.C. § 1983 extends even to a for-profit private corporation. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003)("PHS [Prison Health Services] cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability."). The United States Court of Appeals for the Third Circuit has applied the standard for municipal liability to claims against a private corporation providing services in a prison. *Id.* at 584. Thus, to state a claim upon which relief may be granted, a plaintiff must allege facts from which it can

plausibly be inferred that there was a relevant policy or custom of the corporation and that the policy or custom caused the constitutional violation at issue.

In this case, Davila has not alleged essential elements of a claim of municipal or corporate liability under § 1983. He has not alleged any facts from which it can reasonably be inferred that Lackawanna County or Correctional Care, Inc. had a policy or custom regarding the events he complains about, the nature of any policy or custom, or that a policy or custom caused a violation of his rights. Accordingly, the complaint fails to state a 42 U.S.C. § 1983 claim upon which relief may be granted against the named defendants.

### C. The Complaint Fails to State an ADA Claim Upon Which Relief May Be Granted.

In addition to 42 U.S.C. § 1983 claims, Davila asserts claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. He claims that he was denied mental health treatment and that, because he has mental health disabilities, he was placed on behavior watch, which resulted in him being segregated from the prison population and in him being denied participation in programs offered at the prison.

Title II of the ADA, under which Davila brings his claims, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded

from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1). Under Title II of the ADA, "[t]he term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* at § 12132(2). Further, and of importance for current purposes, the ADA defines a "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities of such [an] individual"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." *Id.* at § 12102(1)(A)-(C). The ADA provides that the term "disability" is to be liberally construed "in favor of broad coverage" "to the maximum extent permitted by the terms of [the] Act." *Id.* at § 12102(4).

Although Davila refers to himself as disabled and as having mental health disabilities, he has not alleged any facts to support an inference that he is mentally disabled. He has not alleged what condition or conditions he has or how those conditions affect his major life activities. While at this stage of the proceedings, the

court must accept all well-pleaded allegations in the complaint as true, Davila's use of the term disability is merely a conclusion, which is not entitled to the assumption of truth. *Twombly*, *supra,* 550 U.S. at 555*; see also Paoli v. Delaware*, CIV.A. 06-462 (GMS), 2007 WL 4437219 (D. Del. Dec. 18, 2007)(concluding that the allegation that the plaintiff "was disabled as defined by the ADA" is a conclusory allegation of law that the court need not credit). Because Davila has not alleged facts from which it can plausibly be inferred that he has a mental disability within the meaning of the ADA, the complaint fails to state an ADA claim upon which relief may be granted. Moreover, even assuming that he has sufficiently alleged that he is disabled, to the extent that Davila is merely claiming that he was denied treatment for his disability, such a claim fails under the ADA. *See Iseley v. Beard,* 220 F. Appx. 137, 141 (3d Cir. 2006)("Iseley does not claim that he was excluded from any program on the basis of his disability. Rather, he claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions.").[2]

---

[2] We have construed the complaint as raising ADA claims only as to Davila's alleged mental disabilities, not as to his hearing impairment, which very well may qualify as a disability. Davila does not allege that he was denied participation in programs because of his hearing, and, as set forth above, merely being denied medical treatment does not constitute a violation of the ADA. So, even if the ADA claims are construed to extend to Davila's hearing impairment, the complaint fails to state an ADA claim upon which relief may be granted.

## D. Davila's Complaint Should Be Dismissed Without Prejudice.

In sum, in its current form the complaint fails to state a claim upon which relief may be granted. Before dismissing a complaint for failure to state a claim upon which relief may be granted under the screening provisions of 28 U.S.C. § 1915, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). In light of this requirement, although this screening merits analysis calls for dismissal of the complaint, Davila should be granted another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. Thus, we recommend that the complaint be dismissed, but that the dismissal be without prejudice to Davila filing an amended complaint to attempt to state claims upon which relief may be granted.

## IV. Recommendation.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that Davila's application to proceed *in forma pauperis* be granted. **IT IS FURTHER RECOMMENDED** that the complaint be dismissed, but that the dismissal be without prejudice to providing Davila one final opportunity to endeavor to correct

the defects cited in this Report, provided that Davila acts within 21 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of March, 2013.

                                            S/*Susan E. Schwab*
                                            Susan E. Schwab
                                            United States Magistrate Judge